**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0049-24

ROSA JOVANOVIC AS
ADMINISTRATRIX OF THE
ESTATE OF BOBAN
JOVANOVIC AND ROSA
JOVANOVIC,

     Plaintiff-Appellant,

v.

ESTATE OF DAVID RAVIN,

     Defendant,

and

ST. JOSEPH'S REGIONAL
MEDICAL CENTER AND
KATHERINE VLASICA, D.O.,

     Defendants-Respondents.

_____

     Argued September 11, 2025 – Decided March 20, 2026

     Before Judges Smith and Berdote Byrne.

     On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-0012-18.

Michael Wiseberg argued the cause for appellant (The Dratch Law Firm PC, attorneys; Brian M. Dratch, of counsel and on the brief; Michael Wiseberg, on the brief).

Beth A. Hardy argued the cause for respondents St. Joseph's Regional Medical Center and Katherine Vlasica, D.O. (Farkas & Donohue, LLC, attorneys; Charles E. Murray, III, of counsel; Beth A. Hardy, on the brief).

PER CURIAM

Plaintiff, Rosa Jovanovic, Administratrix of the Estate of Boban Jovanovic, appeals the trial court's order barring plaintiff's expert and dismissing her deceased husband's medical malpractice claim. We affirm for the reasons which follow.

I.

On April 4, 2015, Boban Jovanovic was performing work at the property of defendant David Ravin, when he fell and suffered a fractured leg. Boban went to the emergency room at St. Joseph's Regional Medical Center, where he was initially treated for pain with hydromorphone and Valium by Dr. Katherine Vlascia. After being medicated, Boban became unresponsive. He suffered respiratory failure and hypoxia but was stabilized when staff administered Narcan. After the hypoxia episode, Boban had surgery to repair a fractured femur. During surgery he suffered blood loss, requiring transfusions. He also

suffered from a condition described as "post-operative confusion." Post-surgery, Boban transferred to a rehabilitation center and was eventually discharged. From 2016 until 2019, he developed progressive cognitive decline which ultimately led to him being diagnosed with dementia.

Boban filed two complaints. First, he filed suit against David Ravin in Essex County for damages arising from his fall. Second, Boban sued St. Joseph's Hospital and Dr. Vlasica in Union County for medical malpractice. The claims were consolidated in Essex County in December 2017. Boban died April 9, 2020, and his complaints were amended to include Rosa, administratrix of his estate, as plaintiff. By this time Ravin had died as well, so both the Estate of Ravin and the medical defendants answered the original and amended complaints.[1]

Germaine to this appeal, plaintiff alleged claims of negligence against the hospital and Dr. Vlasica for improper administration of narcotics, causing transient hypoxia as well as causing or accelerating Boban's cognitive decline. The medical defendants denied liability, asserting defenses. During extensive discovery, the parties produced expert reports on plaintiff's theory of liability.

---

[1] Plaintiff settled their claims against the Estate of Ravin in June 2024. A stipulation of dismissal was then filed on July 31, 2024.

A-0049-24

Plaintiff's neurologist, Dr. Bernard Schanzer, was deposed twice, on January 29, 2020, and February 18, 2021. After discovery ended, defendants moved to bar Dr. Schanzer as an expert at trial, and for summary judgment on all claims. Plaintiff opposed. The trial court framed the dispositive question as:

> Plaintiff would be entitled to get to the [j]ury with proof that, to a reasonable degree of medical certainty, Dr. Vlascia's negligence was a substantial contributing factor in causing such injury. But this acknowledgement does not free the [p]laintiff from his burden of proving such fact[] via expert testimony offered to a reasonable degree of medical probability. Put differently, to prove proximate cause as to a physician's deviation, even in the context of multiple causative events, the [p]laintiff must still present an expert who opines to the required standard that the deviation was a substantial contributing factor.

The trial court then found plaintiff's expert failed to present such an opinion.

The court quoted Dr. Schanzer's primary report in its statement of reasons:

> The events of the fall on April 4, 2015 and during the subsequent event [sic] in the ER hospitalization <u>may</u> have unmasked an underlying dementing process. However, this dramatically [] precipitated the patient's deterioration. Remotely[sic] and unproven[,] but to be considered would be a very atypical delayed post-hypoxic encephalopathy.
>
> [Emphasis added.]

The trial court found that plaintiff's expert's statements "certainly do not establish a viable theory of causation." The court further found that Dr.

4

A-0049-24

Schanzer failed to show how Boban's traumatic ER incidents, including his hypoxia, operated singly or in combination with other events to cause his deterioration. Reviewing Dr. Schanzer's deposition testimony, the court further found that the doctor "testified – more than once – that he was unable to state the degree of medical probability that the incident of brief hypoxia in the [e]mergency [r]oom was a cause of the [p]laintiff's neurocognitive dementia."

The court found next:

> [T]here is simply no question that, in his extensive deposition testimony, Dr. Schanzer explicitly acknowledged the lack of a basis on which to conclude with the requisite certainty that medical negligence by Dr. Vlasica was either <u>the</u> or <u>a</u> cause of the [p]laintiff's injury. He expressly disclaimed any ability to render an opinion that such negligence was a proximate cause of the [p]laintiff's dementia. It is not possible to read his testimony and conclude otherwise.
>
> Even granting that Dr. Schanzer intended in the brief testimony quoted above to state an opinion as to the collective impact of the accident, the [e]mergency [r]oom event and surgical procedure on the [p]laintiff . . . any such testimony, insofar as it relates to Dr. Vlascia, is wholly undermined and recanted by his extensive, repeated and far more focused statements concerning the possibility only of post-anoxic encephalopathy. Because Dr. Schanzer specifically disclaimed an opinion to a reasonable degree of medical probability as to a causal link between the hypoxic event in the [e]mergency [r]oom and the [p]laintiff's neurocognitive deficit, Dr. Schanzer fails to support the claim of proximate cause as to Dr. Vlascia.

5

Guided by our decision in Ritondo by Ritondo v. Pekala, 275 N.J. Super 109 (App. Div. 1994), the trial court determined that Dr. Schanzer abandoned his opinion on the issue of causation during his deposition, and that permitting plaintiff to elicit his testimony at trial, on this record, would invite jury speculation. After barring Dr. Schanzer's testimony, the court then dismissed plaintiff's claims against defendants.

Plaintiff appeals, contending that the trial court's order barring Dr. Schanzer's report and dismissing all claims was error, because the doctor did not abandon his opinion on causation during his deposition.

II.

We consider the relevant standards of review, as well as the sequence in which we apply them to the record before us.

When "a trial court is 'confronted with an evidence determination precedent to ruling on a summary judgment motion,' it 'squarely must address the evidence decision first.'" Townsend v. Pierre, 221 N.J. 36, 53 (2015) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384-85 (2010)). "Appellate review . . . proceeds in the same sequence, with the evidentiary issue resolved first, followed by the summary judgment determination of the trial court." Ibid.

6

## A.

In reviewing a trial court's decision on admission of expert testimony in a civil action, we apply an abuse of discretion standard. In re Accutane Litig., 234 N.J. 340, 392 (2018). The trial court's ruling should be reversed "only if it was so wide off the mark that a manifest denial of justice resulted." Rodriguez v. Wal-Mart Stores, Inc., 237 N.J. 36, 57 (2019) (quoting Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016)) (internal quotation marks omitted).

## B.

Our review of a trial court's summary judgment decision is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180 (2024); see also R. 4:46-2(c). "The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To decide whether a genuine issue of material fact exists, the trial court must draw[] all legitimate inferences from the facts in favor of the non-moving party." Ibid. (alteration in original) (quoting Friedman v. Martinez, 242 N.J. 449, 472 (2020)) (internal quotation marks omitted); see also R. 4:46-1 to - 6. To rule on summary judgment, courts must determine "whether the evidence presents a sufficient

7

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Vizzoni v. B.M.D., 459 N.J. Super. 554, 567 (App. Div. 2019) (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007)). "Summary judgment should be granted 'if the discovery and any affidavits show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.'" DeSimone, 256 N.J. at 180-81 (quoting Perez v. Professionally Green, LLC, 215 N.J. 388, 405 (2013)) (internal quotation marks omitted).

III.

A.

To establish a claim of medical malpractice, "a plaintiff must present expert testimony establishing[:] (1) the applicable standard of care; (2) a deviation from that standard of care; and (3) that the deviation proximately caused the injury." Nicholas v. Mynster, 213 N.J. 463, 478 (2013) (quoting Gardner v. Pawliw, 150 N.J. 359, 375 (1997)). The burden of proof on all elements of an ordinary or medical negligence claim—which includes that the defendant's conduct proximately caused the plaintiff's injury—is normally on the plaintiff. See Komlodi v. Picciano, 217 N.J. 387, 409 (2014).

A-0049-24

In a medical malpractice action, generally "the causation element . . . is the most complex." Verdicchio v. Ricca, 179 N.J. 1, 23 (2004). However, "[w]hen a patient is treated for a preexisting condition and a physician's negligence worsens that condition, it may be difficult to identify and prove the precise injury caused by the physician." Komlodi, 217 N.J. at 414 (citing Evers v. Dollinger, 95 N.J. 399, 413 (1983)). Our Supreme Court has created a two-pronged test to address such a scenario: "a jury must decide whether any 'negligent treatment increased the risk of harm posed by a preexistent condition' and, if so, 'whether the increased risk was a substantial factor in producing the ultimate result.'" Ibid. (quoting Scafidi v. Seiler, 119 N.J. 93, 108 (1990)). "In the typical Scafidi case, the plaintiff seeks treatment for a preexisting condition, and the physician, through negligence, either fails to diagnose or improperly treats the condition, causing it to worsen and sometimes causing the plaintiff to lose the opportunity to make a recovery." Id. at 415.

### B.

We address the dispositive issue on appeal, the trial court's order barring the plaintiff's expert.

Plaintiff's core argument is that the trial court neglected to consider certain deposition testimony by Dr. Schanzer, in which the doctor stated that his opinion

9

was grounded in a reasonable degree of medical probability. Plaintiff further contends that this testimony presents a genuine issue of material fact on causation which defeats summary judgment. We are unconvinced.

The conflicts in Dr. Schanzer's written report and his deposition are the heart of the matter. The trial court found that, to the extent Dr. Schanzer had issued an opinion linking Boban's emergency room incidents to his progressive dementia, he abandoned it during his deposition. As one example of his abandonment of plaintiff's causation theory, we recite this cross-examination colloquy during Dr. Schanzer's January 29, 2020 deposition:

> Q. It is not your opinion that Mr. Jovanovic's condition was caused by hypoxic or anoxic encephalopathy as a probability. Correct?
>
> A. Correct.
>
> Q. Fair. And nowhere in these reports do you indicate more likely than not Plaintiff's cognitive complaints were caused by a brief period of respiratory depression on April 4th, 2015. Correct?
>
> A. Correct.
>
> Q. And you do not have an opinion more likely than not that Plaintiff suffered a permanent post-hypoxic encephalopathy. Correct? I know I'm restating things, but correct?
>
> A. Correct.

A-0049-24

Ritondo is instructive here. The plaintiff parents in that case filed an action against the obstetrician who attended their child's birth, claiming that the defendant deviated from accepted standards of care during delivery. Ritondo, 275 N.J. Super. at 111-12. The plaintiffs had one expert witness to testify on issues of liability. Id. at 112. At trial, the plaintiffs' expert admitted during cross-examination that certain actions taken by the defendant during delivery were reasonable under the circumstances. Id. at 112-13. On motion by the defendant, the trial court dismissed the plaintiffs' claims. Id. at 115 n. 3. We affirmed, stating:

> [Plaintiffs' expert] completely abandoned his original opinions concerning [defendant's] deviation from the medically accepted standard of care. His negation of his direct testimony was a clear and unequivocal withdrawal of his opinion. As a result, the [plaintiffs] were left without proof of any deviation of the standard of care, a necessary element of their claim. Therefore the judge correctly granted the motion for involuntary dismissal.
>
> [Id. at 116 (citations omitted).]

Our careful review of the entire record, including his two depositions, reveals that Dr. Schanzer abandoned any opinion he had that Boban's ER respiratory incidents were a proximate cause of his progressive dementia. We are unpersuaded by plaintiff's argument that Dr. Schanzer's conflicting

11

testimony is enough to present a genuine issue of material fact. Plaintiff was left without sufficient proof on causation, and we see no reason to depart from our analysis in Ritondo.

To the extent plaintiff argues for application of the modified causation standard employed in Gardner, we simply note plaintiff has offered no proof of a preexisiting condition of dementia which would support such a claim, hence Gardner does not apply. See 150 N.J. at 376. We discern no error in the trial court's order barring plaintiff's expert from testifying at trial.

Having concluded that that trial court did not abuse its discretion in barring plaintiff's expert, on this record, it follows that plaintiff's medical malpractice claims against defendants must fail on de novo review.

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

12

A-0049-24